IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-CV-1431-M-KS

| | | |
|---|---|---|
| ARIANA BROWN,<br><br>Plaintiff,<br><br>v.<br><br>TRISURA SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM & RECOMMENDATION** |

This matter is before the court on Defendant's motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss two of Plaintiff's claims for failure to state a claim upon which relief can be granted. Plaintiff has responded in opposition, and Defendant has replied. Where the motion has been referred to the undersigned and the parties have not consented to jurisdiction of the magistrate judge, Defendant's motion is undertaken pursuant to 28 U.S.C. § 636(b)(1)(B) for memorandum and recommendation. For the reasons stated below, it is recommended that Defendant's motion be denied.

## BACKGROUND

Plaintiff initiated this action in the Superior Court of Onslow County, North Carolina, by filing a complaint against Trisura Specialty Insurance Company ("Trisura") on July 8, 2025. (Notice Removal [DE #1] at 1.) Plaintiff's claims arise from Trisura's failure to pay the full amount of Plaintiff's claim under a homeowner's

insurance policy issued by Trisura. Trisura removed the action to this court on August 27, 2025, based upon diversity of citizenship jurisdiction. (*Id.* at 2.) The allegations of Plaintiff's complaint, which are taken as true for purposes of the instant motion, show the following.

Plaintiff owns an approximately one-half acre tract of land in Jacksonville, North Carolina, upon which a single-family residence is situated ("the Residence"). (Compl. [DE #1-1] ¶ 7.) The property was insured by Trisura under Special Form Homeowner's Policy number T3NC_01370977-1 ("the Policy"). (*Id.* ¶ 9.) The Policy provided special form coverage for physical loss or damage to the Residence, including water damage. (*Id.* ¶ 10.) A Limited Water Back-Up and Sump Discharge or Overflow Coverage endorsement ("Water Back-Up Endorsement") to the Policy provided coverage up to $10,000 for certain losses caused by water which originates from within the Residence and backs up through sewers or drains, or overflows or is discharged from a sump, sump pump, or related equipment. (Ex. 1, Compl. at 68.)

In June 2023, Plaintiff observed "water coming up from underneath the Residence's vinyl plank flooring, alerting her to water damage." (Compl. ¶ 8.) Plaintiff timely notified Trisura of the loss and made a claim under the Policy. (*Id.* ¶ 12.) Trisura retained Riverwood Claims Management ("Riverwood") to handle the adjustment process (*id.* ¶ 13), while Plaintiff retained Carolina Claims Solutions, a group of public adjusters, to assist with the claim (*id.* ¶ 14). On January 17, 2024, Zach Roseberry, a technician with American Leak Detection, conducted an inspection of the Residence on behalf of Trisura. (*Id.* ¶ 15.) Roseberry noted visible water damage

in the guest bathroom and kitchen of the Residence but detected no active leaks. (*Id.* ¶¶ 15–16 & Ex. 2, Compl.) Roseberry prepared an inspection report in which he provided the following details:

> Arrived on site and met with homeowner who stated that she had water coming up from under lvp flooring when she used the dishwasher, kitchen sink and shower on first floor. Performed a pressure test on entire plumbing system at 40psi for 15 minutes and the pressure held indicating no active leaks. Tested the dishwasher, kitchen sink as well as shower, bathroom vanity and toilet on first floor and found that everything was draining well and did not see any leaks. Decided to still video sewer line from kitchen sink out to road and found a few feet from the street sewer clean out there was a belly in the sewer line that was holding water that could trap toilet paper or other heavier weight and cause the sewer system to back up over[ ]time. Customer needs to have sewer line repaired in yard to prevent future back ups. Marked out an estimated area on the driveway and in front yard where the sewer line has the belly and would need to be dug sup [sic] and repaired.

(Ex. 2, Compl. at 90.)

On February 14, 2024, Riverwood informed Plaintiff that coverage for the claim was limited to $10,000 under the Water Back-Up Endorsement. (Compl. ¶ 18.) The same day, Trisura obtained a repair estimate of $29,414.63 from Custard Insurance Adjusters. (Compl. ¶ 19 & Ex. 3, Compl. at 92–106.)

Plaintiff contests Trisura's determination that the Water Back-Up Endorsement provides the applicable coverage. On August 7, 2024, Plaintiff submitted a sworn proof of loss claiming damages of $100,258.04 under the Policy. (Compl. ¶ 22 & Ex. 4, Compl. at 107.) Subsequent to Trisura's determination, discussions were held between Plaintiff's public adjuster, Plaintiff's counsel, and Trisura's claims adjuster, but the parties did not reach an agreement regarding Plaintiff's claim. (Compl. ¶¶ 20–21, 23–24, 26.)

In the instant action, Plaintiff asserts claims under North Carolina law for declaratory judgment, breach of contract, common law bad faith, and unfair and deceptive trade practices. (Compl. ¶¶ 27–49.) Presently before the court is Trisura's motion to dismiss the common law bad faith and unfair and deceptive trade practices claims for failure to state a claim upon which relief can be granted. (Partial Mot. Dismiss [DE #13]; Mem. Supp. Partial Mot. Dismiss [DE #14].)

## DISCUSSION

### I. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint or any claims contained therein that fail to state a claim upon which relief can be granted. The intent of Rule 12(b)(6) is to test the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (all reasonable inferences drawn in favor of plaintiff). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

To survive a 12(b)(6) motion, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not contain detailed factual allegations, but it must give

a defendant fair notice of what the claim is and the grounds upon which it rests. *Id.* at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which are sufficient to raise a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Facial plausibility is more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. It requires the plaintiff to articulate facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

## II. Common Law Bad Faith

"Under North Carolina law, 'every contract [contains] an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefit of the agreement.'" *Dane v. Commonwealth Partners, LLC*, No. 5:22-CV-449-M, 2025 WL 465884, at *11 (E.D.N.C. Feb. 11, 2025) (alteration in original) (quoting *GB Grp., LLC v. Bulldog Nat'l Risk Retention Grp., Inc.*, No. 5:23-CV-00029-BO, 2023 WL 9514088, at *3 (E.D.N.C. Dec. 27, 2023)). An action for breach of the covenant of good faith and fair dealing is considered "part and parcel of a claim for breach of contract." *Bailey v. Certain Interested Underwriters at Lloyd's London*, 701 F. Supp. 3d 296, 305 (E.D.N.C. 2023) (quoting *McKinney v.*

*Nationstar Mortg., LLC*, No. 5:15-CV-637, 2016 WL 3659898, at *8 (E.D.N.C. July 1, 2016)), *aff'd*, No. 23-1642, 2024 WL 2795187 (4th Cir. May 31, 2024). However, "North Carolina law recognizes 'a separate claim for breach of an implied covenant of good faith and fair dealing . . . in limited circumstances involving special relationships between parties, such as cases involving contracts for funeral services and insurance.'" *Id.* at 305 (quoting *Michael Borovsky Goldsmith, LLC v. Jewelers Mut. Ins. Co.*, 359 F. Supp. 3d 306, 313–14 (E.D.N.C. 2019)).

"In the insurance context, a claim for breach of the covenant of good faith and fair dealing has three elements: '(1) a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct.'" *Bailey*, 701 F. Supp. 3d at 305–06 (quoting *LRP Hotels of Carolina v. Westfield Ins. Co.*, No. 4:13-CV-94-D, 2014 WL 5581049, at *4 (E.D.N.C. Oct. 31, 2014)). "Bad faith means 'not based on honest disagreement or innocent mistake.'" *Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd.*, 11 F. App'x 225, 239 (4th Cir. 2001) (per curiam) (quoting *Dailey v. Integon Gen. Ins. Corp.*, 75 N.C. App. 387, 396, 331 S.E.2d 148, 155 (1985)). Aggravating or outrageous conduct includes "'fraud, malice, gross negligence, [and] insult' as well as actions denying coverage 'willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights.'" *Bailey*, 701 F. Supp. 3d at 306 (quoting *Universal Underwriters Ins. Co. v. Lallier*, 334 F. Supp. 3d 723, 736 (E.D.N.C. 2018)). Thus, an insurer is entitled to judgment as a matter of law on a bad faith claim where there is a legitimate and honest disagreement over the scope of coverage or validity of a claim.

*Topsail Reef Homeowners Ass'n*, 11 F. App'x at 239 ("[W]hen an insurer denies a claim because of a legitimate, 'honest disagreement' as to the validity of the claim, the insurer is entitled to judgment as a matter of law because the plaintiff cannot establish bad faith or any tortious conduct on the part of the insurer.").

Plaintiff's complaint plausibly alleges that coverage was not reasonably in dispute. Roseberry's report indicates no active leaks in the plumbing and suggests the water damage may have been caused by a backup in the sewer line. However, Roseberry does not appear to have made any determination as to the cause of the water damage, and Plaintiff alleges it was unreasonable for Trisura to limit its liability based solely upon Roseberry's report. (Compl. ¶ 38(i) (alleging Trisura acted in bad faith by "[r]elying solely on a vague and inconclusive third-party vendor (American Leak Detection) that expressly stated the technician could not determine the source of the leak, but still using that rationale as the basis for invoking the 'water back-up' exclusion"); 38(j) (alleging bad faith in "[w]illfully and improperly misapplying the Policy's 'water back-up' exclusion despite the absence of evidence of an actual back-up event"). Assuming the truth of the facts in the complaint, Plaintiff has plausibly alleged Trisura acted in bad faith in determining coverage was limited by the Water Back-Up Endorsement. The allegations of Plaintiff's bad faith claim are therefore sufficient to withstand Rule 12(b)(6) dismissal.

## III. UDTPA

Defendant also moves to dismiss Plaintiff's claim for unfair or deceptive trade practices. North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat.

§ 75-1.1 *et seq.*, ("UDTPA") "prohibits unfair acts which undermine ethical standards and good faith between persons engaged in business dealings." *Mejorado v. CitiMortgage, Inc.*, No. 2:12-CV-59-H, 2015 WL 13632436, at *5 (E.D.N.C. Aug. 6, 2015). "[A] 'mere breach of contract, even if intentional, is not an unfair or deceptive act under [the UDTPA].'" *Wake Chapel Church, Inc.*, No. 5:21-CV-114-M, 2023 WL 7198128, at *9 (alteration in original) (quoting *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 41–42, 626 S.E.2d 315, 323 (2006)). It is only where the breach of contract is accompanied by substantial aggravating circumstances that a UDTPA claim will lie. *Id.*; *see also Tuten v. CitiMortgage, Inc.*, No. 4:14-CV-99-H, 2015 WL 12850549, at *9 (E.D.N.C. Jan. 9, 2015) ("Although simple breach of contract does not qualify as an unfair or deceptive act, it may become the basis for a UDTPA violation if it is 'characterized by some type of egregious and aggravating circumstance.'" (quoting *Carty v. Westport Homes of N.C., Inc.*, 472 F. App'x 255, 260 (4th Cir. 2012))).

"To state a UDTPA claim, a plaintiff must plausibly allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Bailey*, 701 F. Supp. 3d at 307. Conduct that violates North Carolina's Unfair Claim Settlement Act, N.C. Gen. Stat. § 58-63-15(11), as a matter of law, constitutes an unfair or deceptive practice in violation of the UDTPA as "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." *Id.* (quoting *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 71, 529 S.E.2d 676, 683 (2000)). "[A] plaintiff who sufficiently alleges conduct which violates

[§ 58-63-15(11)] satisfies the first and second elements, but [she] must nonetheless sufficiently allege that the violation of [§ 58-63-15(11)] was the proximate cause [of her] injury." *Wake Chapel Church*, 2023 WL 7198128, at *8 (first, second, and fourth alterations in original) (quoting *Cornerstone Assembly of God, Inc. v. Bhd. Mut. Ins. Co.*, No. 4:22-CV-122-BO-KS, 2023 WL 4306671, at *3 (E.D.N.C. June 30, 2023)); *see also Kenney Props., Inc. v. Philadelphia Indem. Ins. Co.*, 665 F. Supp. 3d 752, 767 (E.D.N.C. 2022) ("Although plausibly alleging a violation of [N.C. Gen. Stat. §] 58-63-15(11) satisfies the first two elements of a UDTPA claim, it does not satisfy the proximate cause and injury element."), *aff'd*, No. 22-1842, 2023 WL 8230508 (4th Cir. Nov. 28, 2023).

Plaintiff asserts Trisura violated the UDTPA by "engag[ing] in unfair and deceptive acts and practices in the distribution, marketing and selling of insurance policies to consumers, and in investigating, adjusting, and settling claims brought under such policies, including the Claim and the Policy." (Compl. ¶ 44.) The complaint contains no factual allegations of unfair or deceptive acts by Trisura in "the distribution, marketing [or] selling of insurance policies to consumers." Accordingly, this portion of Plaintiff's UDTPA claim does not withstand Defendant's 12(b)(6) motion.

Plaintiff has plausibly alleged a UDPTA claim based on Trisura's acts in investigating, adjusting, and settling the Claim. For example, Plaintiff alleges Trisura unreasonably relied upon Roseberry's inconclusive inspection report to limit its liability under the Water Back-Up Endorsement and, in so doing, failed to

reasonably investigate the Claim. (Compl. ¶¶ 21, 38, 44.) Plaintiff further alleges that Trisura failed to provide a reasonable explanation of the basis for its coverage determination and settlement offer, compelling Plaintiff to institute litigation to recover her damages and causing Plaintiff to incur attorney's fees and costs associated with this action. (Compl. ¶¶ 18, 28, 38, 44, 46.)

Whether Plaintiff's bad faith and UDTPA claims will be borne out by the facts as revealed through discovery remains to be seen. However, the facts alleged in the complaint are sufficient to state claims for relief. Defendant's motion to dismiss should therefore be denied.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that Defendant's partial motion to dismiss [DE #13] be DENIED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 31, 2026**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b) (E.D.N.C. May 2023).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 17th day of August 2026.

Kimberly A. Swank

KIMBERLY A. SWANK
United States Magistrate Judge